UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK



THE HINDU TEMPLE SOCIETY OF NORTH AMERICA, a New York religious corporation; NARENDRA DESAI; MATHY PILLAI; NIRMALA RAMASUBRAMANIAN; HYMA REDDY; DR. PATHMINI PANCHACHARAM; DR. BRAHMAN SIVAPRAKASA PILLAI; KRISHNASWAMY ANANDARAM; DR. UMA MYSOREKAR; DR. GADDAM DASARATHARAM REDDY; DR. CHITTI RAMAKRISHNA MOORTHY; SHIVAKUMAR KUSUMA PRABHAT; VIJAY KHANNA; SUBARAMANIAM SUNDARARAMAN; LAKSHESH SHANTILAL PANCHAL; RAJ GOPAL IYER,

Plaintiffs,

v.

THE SUPREME COURT OF THE STATE OF NEW YORK, ANTHONY J. PIACENTINI, in his official capacity; JOSEPH G. GOLIA, in his official capacity; SAMBASIVA RAO VENIGALLA; KATTINGER V. RAO; ANAND MOHAN; VENKAIAH DAMA, NEHRU E. CHERUKUPALLI; KRISHNAMURTHY AIYER, and VASANTRAI M. GANDHI,

Defendants.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 04 2004 ★
BROOKLYN OFFICE

CV 04 3342

CASE NO.

AZRACK, J.

## COMPLAINT

1. Plaintiffs The Hindu Temple Society of North America, a New York religious corporation (the "Temple") created to found and continue a Hindu religious organization in the City of New York, County of Queens, for the purpose of promoting and establishing a place of

worship in New York as a permanent place for the holding of religious and cultural congregations, Narenda Desai, Mathy Pillai, Nirmala Ramasubramanian, Hyma Reddy, Dr. Pathmini Panchacharam, Dr. Brahman Sivaprakasa Pillai, Krishnaswamy Anandaram, Dr. Uma Mysorekar, Dr. Gaddam Dasaratharam Reddy, Dr. Chitti Ramakrishna Moorthy, Shivakumar Kusuma Prabhat, Vijay Khanna, Subramaniam Sundararaman, Lakshesh Shantilal Panchal and Raj Gopal Iyer, ("Plaintiffs") for their Complaint against the named defendants the Supreme Court of the State of New York, Anthony J. Piaccentini, Joseph G. Golia, Sambasiva Rao Venigalla, Kattinger V. Rao, Anand Mohan, Venkaiah Dama, Nehru E. Ckerukupalli, Krishnamurthy Aiyer, and Vasantrai M. Gandhi, ("Defendants") state as follows:

**JURISDICTION AND VENUE**

2. This is an action brought to enforce Plaintiffs' rights against the Defendants under several provisions of the United States Constitution and federal statutes. This Court has subject matter jurisdiction over this Complaint under 28 U.S.C. § 1331, because the action arises under the laws of the United States.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial number of the events giving rise to the claims in this Complaint have occurred and will occur in this judicial district.

**NATURE OF THE CASE**

4. Plaintiffs request injunctive relief from this Court to prevent several individuals, using the authority of the Supreme Court of the State of New York, from destroying a well-

established and well-functioning Hindu Temple by removing its leadership, ordering it to change its religious polity, and prevent it from engaging in religious speech and exercise. The current leadership has engaged in no malfeasance; rather all of Defendants' actions are based on a filing technicality in organizational documents created decades ago and never observed, as admitted by Defendants. Both the Trial and Appellate Divisions of the New York Supreme Court have absolutely refused to provide any—much less a "full and fair"—opportunity to litigate Plaintiffs' constitutional defenses to such actions. The state action is *Sambasiva Rao Venigalla et al., v. Dattatreyudu Nori et al.*, Index No. 15676/01 (Supreme Court, Queens County, June 10, 2001) (the "State Court Action").

5. The State Court Action was brought by a number of insurgent individuals (the "Insurgent Defendants") in an attempt to effect a hostile takeover of the Temple using the New York Religious Corporations Law, N.Y. RELIG. CORP. LAW, §§ 1-455 (the "RCL") and the New York state courts.

6. Defendants Judge Joseph G. Golia and Referee Anthony J. Piacentini have used, or are using, their judicial offices to engage in the following acts, among others:

- Take control over the religious organization.
- Prohibit the Temple from engaging in certain religious exercise and religious speech, including the building of chapels donated by devotees to particular deities, the building of a rajagopuram, a tower designed to be the religious "heart" of the Temple and built to Hindu religious specifications, and the expansion of facilities for Hindu priests;
- Impose a voting membership requirement upon the Temple, which has, as Defendants admit, always been governed by a self-perpetuating Board of Trustees in accordance with Hindu religious belief and practice and Article 9 of the New York State Religious Corporations Law, under which the Temple is incorporated;
- Determine the qualifications for, and who will be, a member of the Temple; including determining who is a "Hindu" based solely on the family name of the

person submitting an application; and

- Ultimately determine how the Temple is to be governed in disregard of the religious beliefs and customs of the Plaintiffs, the language of Article 9 of the New York State Religious Corporations Law, and the United States Constitution.

7. Defendants Golia and Piacentini have ordered Plaintiffs and their representatives, Subramaniam Sundararaman, Saimamba Veeramachaneni, and Shivakumar K. Prabhat, to turn over to Defendant Piacentini confidential mailing lists of plaintiff Hindu Temple Society and have begun the unconstitutional process of soliciting and choosing members of the Temple. These orders have been accompanied by repeated and premature threats of contempt.

8. The Defendants' imposition of their own concept of Temple governance, and their otherwise interfering in the operation of the Temple, violates Plaintiffs' rights under the United States Constitution, including their rights under the First and Fourteenth Amendments to the United States Constitution to (a) autonomously organize themselves as a religious polity, (b) freely exercise their religious beliefs, (c) associate for expressive purposes, (d) equal protection of the laws, and (e) due process of the laws.

## PARTIES

### PLAINTIFFS

9. Plaintiff THE HINDU TEMPLE SOCIETY OF NORTH AMERICA (the "Temple"), is a New York religious corporation organized and existing under the RCL, and is located at 45-57 Bowne Street, Flushing, NY 11355, in Queens County, New York. Plaintiff Temple is a Respondent in the State Court Action.

10. Plaintiff NARENDA DESAI is a member of the Executive Committee of the

Temple. Plaintiff is a devotee of the Temple and is not a party to the State Court Action. His ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

11. Plaintiff HYMA REDDY is a devotee and member of the Executive Committee of the Temple. She is not a party to the State Court Action. Her ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

12. Plaintiff Dr. PATHMINI PANCHACHARAM is a devotee and member of the Executive Committee of the Temple. He is not a party to the State Court Action. His ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

13. Plaintiff Dr. BRAHMAN SIVAPRAKASA PILLAI is a devotee of the Temple. She is not a party to the State Court Action. Her ability to practice her religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

14. Plaintiff KRISHNASWAMY ANANDARAM is a devotee and member of the Executive Committee of the Temple. He is not a party to the State Court Action. His ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

15. Plaintiff MATHY PILLAI is a devotee of the Temple. She is not a party to the State Court Action. Her ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

16. Plaintiff DR. UMA MYSOREKAR is the President of the Temple. Plaintiff Dr.

Uma Mysorekar, is a devotee of the Temple, a member of its Board of Trustees and a Respondent in the State Court Action. Her ability to practice her religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

17. Plaintiff DR. GADDAM D. REDDY is a member of the Board of Trustees of the Temple. Plaintiff Dr. Gaddam D. Reddy is a devotee of the Temple and a respondent in the State Court Action. His ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

18. Plaintiff LAKSHESH SHANTILAL PANCHAL is a member of the Board of Trustees of the Temple. Plaintiff Lakshesh Shantilal Panchal is a devotee of the Temple and a Respondent in the State Court Action. The actions of Defendants have prevented Plaintiff Panchal from worshipping the Hindu deity Devi Kodiarmata in a planned new chapel of which he is the principal sponsor. His ability to practice his religion, including the worship of Devi Kodiarmata, and to freely associate with others for that purpose is imperiled by the actions of the defendants.

19. Plaintiff CHITTI RAMAKRISHNA MOORTHY is a member of the Board of Trustees of the Temple. Plaintiff Chitti Ramakrishna Moorthy is a devotee of the Temple and a Respondent in the State Court Action. His ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

20. Plaintiff SHIVAKUMAR K. PRABHAT is a member of the Board of Trustees and Treasurer of the Temple. Plaintiff Shivakumar K. Prabhat is a devotee of the Temple, Respondent in the State Court Action and a member of the "Managing Committee" appointed by Defendant Piacentini. His ability to practice his religion and to freely associate with others for

that purpose is imperiled by the actions of the Defendants.

21. Plaintiff VIJAY KHANNA is a member of the Board of Trustees of the Temple. Plaintiff Vijay Khanna is a devotee of the Temple and a Respondent in the State Court Action. His ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

22. Plaintiff SUBRAMANIAM SUNDARARAMAN is Chairman of the Board of Trustees of the Temple. Plaintiff Sundararaman is a devotee of the Temple, a Respondent in the State Court Action and member of the "Managing Committee" appointed by referee Piacentini. His ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

23. Plaintiff RAJ GOPAL is a member of the Board of Trustees of the Temple. Plaintiff Raj Gopal is a devotee of the Temple and a Respondent in the State Court Action. His ability to practice his religion and to freely associate with others for that purpose is imperiled by the actions of the Defendants.

**DEFENDANTS**

24. Defendant SUPREME COURT OF THE STATE OF NEW YORK is a part of the duly constituted judicial branch of the State of New York. Its Supreme Court, Queens County, and Appellate Division, Second Department, have rendered the orders authorizing the unconstitutional actions of Defendants Golia and Piacentini.

25. Defendant JOSEPH G. GOLIA is a Justice of the Supreme Court of the State of New York, Queens County, and presides over the State Court Action. Defendant Golia has

rendered the unconstitutional orders authorizing the actions of Defendant Piacentini and threatening the Plaintiffs with contempt and other penalties for exercising their fundamental rights.

26. Defendant ANTHONY J. PIACENTINI is an attorney practicing in Queens County, New York. Defendant Piacentini was appointed by Defendant Golia to act as the referee in the State Court Action. (Defendants SUPREME COURT OF THE STATE OF NEW YORK, GOLIA and PIACENTINI hereinafter referred to as "State Defendants")

27. Defendant SAMBASIVA RAO VENIGALLA is a Petitioner in the State Court Action.

28. Defendant KATTINGER V. RAO is a Petitioner in the State Court Action.

29. Defendant ANAND MOHAN is a Petitioner in the State Court Action.

30. Defendant VENKAIAH DAMA is a Petitioner in the State Court Action.

31. Defendant NEHRU E. CHERUKUPALLI is a Petitioner in the State Court Action.

32. Defendant KRISHNAMURTHY AIYER is a Petitioner in the State Court Action.

33. Defendant VASANTRAI M. GANDHI is not a Petitioner in the State Court Action. He was appointed as a representative to Defendant Piacentini's "Managing Committee" by the petitioners in the State Court Action.

## STATEMENT OF FACTS

34. The Hindu Temple Society is a religious institution dedicated to the Hindu god Ganesh, founded in February 1970. The Temple was dedicated on July 4, 1977. Since that time

it has grown to become the largest Hindu temple in the United States, and the site of the worship of multiple Hindu deities, including Ganesh, Shiva, Shanmukha, Venkateswara, Lakshmi, and the Nahagravas, among many others. A full list of the deities worshipped at the Temple is available on the Temple's website at http://www.nyganeshtemple.org/temple/t_deities.htm.

35. The New York Religious Corporations Law, N.Y. RELIG. CORP. LAW, §§ 1-455 ("RCL"), provides several means of organizing and governing religious corporations. The RCL explicitly provides corporate governance models for the following faiths, intended by the Legislature to track those faiths' actual religious structures: Protestant Episcopal churches, Apostolic Episcopal churches, parishes of The Holy Orthodox Church in America, parishes of The American Patriarchal Orthodox Church, Presbyterian churches, Roman Catholic churches, Christian Orthodox Catholic churches of the Eastern Confession, Ruthenian Greek Catholic churches, churches of the Orthodox Church in America, Reformed Dutch, Reformed Presbyterian, and Lutheran churches, Baptist churches, churches of the United Church of Christ, Congregational Christian and Independent Churches, churches of the Ukrainian Orthodox Churches in America, churches of the Holy Ukrainian Autocephalic Orthodox Church in Exile, free churches, Churches of Christ, Scientist, Union churches, Free Methodist churches, Spirtualist churches, Churches of the Nazarene, Orthodox Greek Catholic (Eastern Orthodox) churches, Spiritualist churches connected with the National Spiritualist Association, Methodist churches, churches of the Byelorussian Autocephalic Orthodox Church in America, Unitarian and Universalist Societies, Assemblies of God, and Coptic Orthodox churches. N.Y. RELIG. CORP. LAW §§ 40-259, 262-455.

36. Many (perhaps most) religious groups are not represented on the foregoing list.

Hindu temples, for example, are not provided for in the list. This situation results in two classes of religious groups in New York: those with temporal polities custom-designed for them by the Legislature, and those with temporal polities they must attempt to fit into the categories of "free church" or "other." Upon information and belief, from time to time changes in various religious polities occur without concurrent tracking changes in the provisions of the RCL.

37. Some RCL Articles involve membership rights to elect some or all officers of the church, other articles provide no such rights.

38. Article 9 of the RCL, N.Y. RELIG. CORP. LAW, §§ 180-83 ("Article 9") is the "free churches" Article. It provides that the sole means of corporate governance of corporations organized under that Article is to be by a board of trustees consisting of between seven and eleven members who have the exclusive right and duty to select trustees to fill all vacancies on the Board of Trustees.

39. The Temple was organized under Article 9, which provides no voting rights for members and requires that the existing Trustees are required to choose their successors and fill all vacancies on the Board of Trustees. Upon information and belief, the organizers of the Temple chose the "free church" format as the form of religious corporation most closely approximating the religious polity familiar to them in India.

40. The Certificate of Incorporation of the Temple was filed with the New York Secretary of State in February 1970.

41. Upon information and belief, the organizers and original trustees of the Temple (the "Proxy Organizers") were not Hindu and are all now deceased. Upon information and

belief, none of the Hindus involved with the creation of the Temple could subscribe to the Certificate of Incorporation because none were United States citizens.

42. In 1970, draft bylaws of the Temple (the "1970 Draft Bylaws") were submitted with an application to the Internal Revenue Service ("IRS") for an exemption from taxation as a religious organization. The 1970 Draft Bylaws were not completed and contained several blanks that had not been filled in. Upon information and belief, the 1970 Draft Bylaws were never adopted by the Temple, nor were they ever used in the governance of the Temple. Upon information and belief, the only time the 1970 Draft Bylaws were ever used was in the application to the IRS.

43. These Draft Bylaws contain provisions for a potentially limitless voting membership, which would elect the Board of Trustees. This is the only place in the history of the Temple (prior to the actions complained of in this suit) where there is a reference to such a voting membership.

44. This provision is contrary to Hindu religious tradition and the express provisions of Article 9 (and therefore void as conflicting with state law and the certificate of incorporation).

45. Based on this language in the 1970 Draft Bylaws, the Defendants are attempting to "reorganize" the Temple through application of the RCL.

46. In direct contradiction to the 1970 Draft Bylaws, the IRS Application, Form 1023, which the 1970 Draft Bylaws accompanied, asks "Have you issued or do you plan to issue membership, stock, or other certificates evidencing voting power in the organization?" In response the "No" box is checked.

47. The first building of the Temple was constructed in 1976 and consecrated on July

4, 1977, as the first traditional Hindu temple in the United States. The Temple was dedicated at that time to the Hindu god Ganesh.

48. On June 15, 1978, the Board of Trustees of the Temple approved a set of bylaws (the "1978 Bylaws"). Upon information and belief, the 1978 Bylaws have been amended at least ten times since 1978 and have been used as the primary corporate governance document for the Temple since their adoption.

49. The 1970 Draft Bylaws were not used as the primary corporate governance document for the Temple.

50. The Board of Trustees has always exercised complete control of the religious and legal affairs of the Temple, including without limitation management control over the Executive Committee; the power to appoint, hire, and dismiss priests; authority over the design and expansion of the Temple grounds according to Hindu religious principles; management control of the scheduling of religious services at the Temple; amounts charged for puja, wedding, and other religious services at the Temple; which deities will be honored at the Temple; the forms of devotion that will occur at the Temple; control over the finances of the Temple, including whether to enter into contracts and to take on debt obligations; and all other aspects of religious activities associated with the Temple. The Board of Trustees has exercised sole religious control over the Temple for the entire period of its existence.

51. The Board of Trustees of the Temple has an extensive system of financial control, including audited annual financial statements which are made available to all interested persons who attend the annual Assembly every year in December. Additionally, the Temple encourages, receives and answers comments, questions and suggestions from devotees on an ongoing basis.

52. The Board of Trustees continues to exercise control over the affairs of the Temple to date, except for the control asserted by the State Defendants.

53. The Temple has never practiced a "democratic" form of Temple governance. Such control would violate the religious beliefs and practices of the Temple and its devotees.

54. The Temple was organized to more closely match the governing structure of traditional temples in India. As the founder of the organization described to an academic, "Such an organization must be served by a corps of a few, totally dedicated, like-minded persons, who are financially committed to the scale of resources that are committed."

55. Hindu temples in India have traditionally not been organized as democratic institutions with concepts such as "membership," "voting rights," or even the concept of a "congregation."

56. Hindu temples in India are typically run by either a self-perpetuating board of trustees, among whose sacred duties are choosing successors to continue the work of the temple, or by trustees appointed by the entity which endows the temple.

57. Defendant Aiyer has admitted that "The temple was managed in a totalitarian form from the very beginning."

58. Defendant Piacentini has admitted that "members have never voted for Trustees."

59. Defendant Golia has admitted that the Board of Trustees acts as an "oligarchy."

60. The Insurgent Defendants brought the State Court Action in the Supreme Court of the State of New York, Queens County, in June 2001, seeking, among other things, a dissolution of the Board of Trustees of the Temple, the appointment of a temporary receiver, the convening of a meeting of the "members" of the Temple, and the election of a new Board of Trustees.

61. The Temple's Trustees informed the Supreme Court that "membership" in the Temple was merely a designation of levels of donation, and did not create voting rights in the "members" and that the Temple was not organized as a membership corporation. Nonetheless, the State Defendants are ordering the Temple to create a class of voting members and give those voting members the authority to elect the Trustees, in direct contravention of Hindu beliefs and practice, Article 9 of the RCL, and the Certificate of Incorporation.

62. This invented "membership" in fact has never had any right to vote for Trustees of the Temple. Upon information and belief, no party or nonparty has ever claimed otherwise. Nor would state law permit such membership voting for Trustees.

63. The Insurgent Defendants introduced the 1970 Draft Bylaws into evidence for the first time late in the State Court Action, in October 2001. The named Respondents in the State Court Action then presented to Defendant Golia, by means of an affidavit of Plaintiff Mysorekar (the "1970 Draft Bylaws Affidavit"), extensive evidence that the 1970 Draft Bylaws were not adopted, used, or even known to the Board of Trustees.

64. Upon information and belief, Defendant Golia, or an agent of Defendant Golia, struck the 1970 Draft Bylaws Affidavit of Mysorekar from the list of documents considered in rendering Defendant Golia's decision. The 1970 Draft Bylaws Affidavit did not appear in the list of documents considered in rendering Defendant Golia's decision. Upon information and belief, the Appellate Division was not aware that the 1970 Draft Bylaws had never been adopted.

65. On April 18, 2002, Defendant Golia issued a judgment ("April 2002 Judgment") in the State Court Action, ruling, among other things, that (a) the number of trustees provided for in the 2001 Bylaws should be lowered from 18 to 7, (b) the number of trustees provided for in

the 2001 Bylaws could be raised from 7 to 11 once a Certificate of Incorporation to that effect had been filed in accordance with the RCL, (c) the 2001 Bylaws were invalid insofar as they provided for more than 11 trustees, failed to provide for a class of voting members, and failed to provide for the right of the "members" to elect at least 6 members of the Executive Committee, and (d) that new bylaws should be enacted by the Board of Trustees. All other relief requested was denied.

66. Unhappy with this outcome, the Insurgent Defendants in the State Court Action appealed the April 2002 Judgment to the Supreme Court of the State of New York, Appellate Division on a number of grounds.

67. On August 25, 2003, the Appellate Division, Second Department, in *Venigalla v. Alagappan*, 763 N.Y.S.2d 765 (N.Y. App. Div. 2003) (mem.), reversed Defendant Golia's ruling, holding that the 1970 Draft Bylaws had been duly adopted and governed the Temple. The Appellate Division ordered Defendant Golia to reinstate the 1970 Draft Bylaws, remove the Board of Trustees, and appoint a referee to direct and oversee a reorganizational meeting of the Temple for the purpose of electing a new Board of Trustees.

68. On October 23, 2003, Defendant Golia appointed Defendant Piacentini as referee in accordance with the Appellate Division's order.

69. On December 12, 2003, Defendant Golia ordered Defendant Piacentini to make the determination of "what constitutes a 'voting member'" and the Respondents in the State Court Action to turn over custody of all financial, legal and other documents "that personally exist" to counsel for the respondents. Defendant Golia also warned respondents (some of whom are Plaintiffs in this lawsuit) that "This Court fully intends to consider all available remedies in

the event the respondents intentionally fail to comply with both the letter and the spirit of this Order."

70. In the December 12, 2003 Order, Defendant Golia ordered the State Court Action respondents not to "enter into any long term or extended contracts or agreements without the express written consent of the appointed referee." This restriction has prevented the Temple from building the rajagopuram, from building priestly residences, from building planned expanded chapels for the deities Ayappa and Devi Kodiarmata, and from building spaces for the deities Narasimha and Dakshinamurthy, which currently have no presence in the Temple. Devotees of Narasimha and Dakshinamurthy have no way of worshipping these deities at the Temple because of the December 12, 2003 Order of Defendant Golia. This inability to worship the deities to which they are particularly devoted is a substantial burden on their religious exercise.

71. Devotees of the Temple typically have a single deity for which they have a particular devotion.

72. Devotees often give monetary gifts to the Temple for the building of structures, including ceremonial gate towers, or gopurams, to honor a deity for which they have a particular devotion. These gifts are normally of great spiritual significance to the donor, and are considered to bring blessings upon the donor and his or her family. Gifts are also given to the general fund of the Temple; these gifts are also considered to be spiritually meritorious.

73. The spiritual merit devotees believe to be derived from such gifts is blocked if the project for which the monies were given—in particular to honor a deity or deities—is not realized.

74. Defendant Golia did not address the constitutional arguments raised by the Respondents in the State Court Action.

75. On January 6, 2004, Defendant Piacentini issued his Interim Report (the "Referee's Report"). In his Referee's Report, Defendant Piacentini stated that he was unable to "determine from existing books and records, who are members of the Society, or for that matter, how or when and for what reason they became lifetime members or general members, especially in view of the fact that members have never voted for Trustees." (Emphasis added.) Based on this finding, Defendant Piacentini purported to decide that he would determine who would be a voting member of the Society:

> "It is uncontroverted that the 1970 By-Laws of the Society have never been followed. I have therefore concluded that the only equitable and just procedure for me to follow in order to determine who is a voting member of the Society is to start from the premise that there are no voting members at this time.
>
> Therefore, procedures are to be implemented by me to determine who should be a voting member of the Society." (Emphasis added.)

76. In his Referee's Report, Defendant Piacentini also purported to decide that he would convene a Managing Committee made up of three representatives of the State Court Action Petitioners and three representatives of the State Court Action Respondents, with "me as Referee, casting any necessary tie breaking vote." (Emphasis added.) Neither Mr. Piacentini nor the three representatives of the State Court Action Petitioners have any ecclesiastical standing to decide the issues that they purport to decide.

77. In his Referee's Report, Defendant Piacentini also purported to decide that the Temple's mailing list, which upon information and belief contains the names of between 15,000 and 21,000 persons including anyone who ever signed the guest book at the Temple, would be

used to "contact all prospective members, and a membership application which is to be drafted by me with input from the Managing Committee, will be sent to each member listed." (Emphasis added.)

78. In his Referee's Report, Defendant Piacentini also purported to decide that "to maintain equity and parity between the parties" both the Petitioners and the Respondents would be allowed to include statements in the mailing to "prospective members[,]" and that the Temple would not be allowed to send any mailings of its own to persons on the mailing list without the prior permission of Defendant Piacentini and without paying for a response by the State Court Action Petitioners. There were no such limitations on speech by the Petitioners.

79. In his Referee's Report, Defendant Piacentini also purported to decide that many forms of expression, including fora such as the bulletin boards on the Temple grounds would be subject to the same sort of equal access rule.

80. In his Referee's Report, Defendant Piacentini also purported to decide that the mailing list of the Temple, as well as "all books and records of the Society" were to be made available to counsel for the State Court Action Petitioners.

81. The State Court Action Respondents filed a Motion to Reject the Referee's Interim Report and sought a stay of all proceedings before Defendant Piacentini, asserting that Defendant Piacentini's intrusion into matters of religious polity that are properly reserved to the Temple and its devotees violates the Temple's rights under the First Amendment to the United States Constitution.

82. On February 5, 2004, Defendant Piacentini responded to the Motion to Reject the Referee's Interim Report, expressing confusion as to why the only religious leaders the Temple

has ever had, the Board of Trustees, should have a determinative role in deciding membership of the Temple.

83. Defendant Piacentini ignored or for another reason did not address the constitutional issues raised in the Motion to Reject the Referee's Interim Report.

84. On April 19, 2004, Defendant Golia denied a motion (the "April 2004 Denial") to admit Roman P. Storzer, counsel for Plaintiffs in this lawsuit, *pro hac vice* in the State Court Action. Mr. Storzer, Executive Vice President and Director of Litigation at The Becket Fund for Religious Liberty, is an expert on issues of religious freedom law, and has been admitted *pro hac vice* numerous times in such cases in state and federal courts across the country. Defendant Golia's stated reason for denying this motion—which upon information and belief is granted in most cases as a matter of course—was the absence of any constitutional issues. Defendant Golia also stated that "[i]t appears strange to me why the Becket Fund which professes to 'vigorously defend the rights of free speech and free exercise of religious…' [sic] would support the concept that no one is entitled to become a member of a particular religious organization, and that no one should be entitled to vote regardless of their participation in donations and/or attendance at services."

85. These statements indicate that Defendant Golia was unwilling to provide a full and fair hearing of the serious constitutional dimensions of muzzling, controlling and reorganizing a faith community.

86. Defendant Golia's statements indicate a predisposition on his part to accord religious value to money given or services attended in determining whether someone is properly allowed to vote for the leadership of a Hindu temple.

87. Defendant Golia's suggestion that it was, in fact, the Insurgent Defendants' free speech and free exercise rights violated by the Temple (obviously not a State actor) indicate strong bias against the Plaintiffs.

88. Under the RCL, and upon information and belief in practice, "membership" in non-Hindu religious groups, *e.g.* the Roman Catholic Church or an Orthodox Jewish congregation, is not predicated upon voting rights, amounts of money given or attendance at services, but instead on religious precepts determined by those religious groups.

89. Under the RCL, and upon information and belief in practice, the leaders of other, non-Hindu religious groups, *e.g.*, Roman Catholic churches, Greek Orthodox churches or a Buddhist monastery, are not chosen by vote of the members of the group, but are chosen according to the religious precepts governing the group. Indeed the Religious Corporations Law specifically provides for non-membership forms of organizations for various religions.

90. Upon information and belief, Defendants Golia and Piacentini would not attempt to rule that the parishioners of the Archdiocese of New York of the Roman Catholic Church would be allowed to elect the Archbishop of New York if the Archdiocese had erred in complying with every provision of its corporate governance.

91. Upon information and belief, Defendants Golia and Piacentini would not attempt to order that membership in the Roman Catholic Church can properly be predicated on the amount of money a person has donated or how often that person has attended Mass.

92. On May 11, 2004, Defendant Piacentini notified the Plaintiffs by letter that no counsel would be allowed to attend meetings of the "Managing Committee." He also refused to create a record of meetings of the Management Committee. At the May 26, 2004 meeting (the

"May 26 Meeting") of the "Managing Committee," Defendant Piacentini also refused to allow the representatives of the Hindu Temple Society to record the meeting, and became visibly angry and hostile towards the Hindu Temple Society's representatives took notes on the proceedings by hand.

93. The representatives of the Hindu Temple Society attended the May 26 Meeting under written protest. At the meeting, Defendant Piacentini demanded that the representatives of the Hindu Temple Society produce the mailing list of the Temple, and that these representatives agree to the membership application form presented to them by the representatives for the Insurgent Defendants.

94. At the May 26 Meeting, Defendant Piacentini became visibly angry when the representatives of the Hindu Temple Society insisted that the "membership" of the Temple be determined by the Temple's Board of Trustees rather than Defendant Piacentini.

95. Defendant Piacentini appeared to conduct ex parte meetings with the representatives of the Insurgent Defendants before and after the May 26 Meeting.

96. On June 2, 2004, counsel for the Hindu Temple Society moved for Defendant Piacentini to be disqualified as Referee in the State Court Action because of his actions at the May 26 Meeting and his untimely request for fees in the amount of $8,100 to be paid out of Temple funds.

97. In an order dated June 10, 2004, but first transmitted to counsel for the Hindu Temple Society in the State Court Action on June 21, 2004 (the "June Order"), Defendant Golia wrote that

> [t]he only indisputable fact in this long and protracted litigation is that the present Board of Directors [sic] of the subject Hindu Temple is

> illegitimate and remains in place only as a 'caretaker' regime until a new board can be elected by the voting members. Unfortunately there seems to be no list of voting members due to the extreme hubris of the existing board who have asserted that there are no members who are entitled to vote. Indeed according to the current board there are no members at all, only individual contributors who have attained the appellation of "devotee."
>
> The obstructionists' [sic] actions of this oligarchy who steadfastly refuses to comply with the mandates of this Court as well as the Appellate Division can no longer be tolerated. Continued refusal shall result in severe sanctions.
>
> Given this extended and steadfast refusal to comply with any of my directives, creates the impression that the respondents have more at stake than the merits of their case, and if so, whether a referral to the District Attorney, to investigate the financial circumstances and any possibility of self dealing or improper disbursements, is warranted.

98. In addition to the threat of contempt and the threat of referral to the District Attorney, Defendant Golia also ordered that the costs of the referee would be paid by the individual State Court Action Respondents rather than the Temple, thereby penalizing them personally for actions taken or omissions made by the Proxy Organizers and previous trustees, and for defending the lawsuit brought against them.

99. The June Order also scheduled a hearing before Defendant Golia and his law secretary, Mitch Kaufman, for the day after the June Order was transmitted to counsel for the Hindu Temple Society.

100. Counsel for the Hindu Temple Society have immediately appealed Defendant Golia's ruling to the Appellate Division, also seeking an interim stay precluding enforcement of the June Order. In their submissions to the Appellate Division on the Motion for a Stay Pending Appeal, the Trustees raised and briefed the constitutional issues.

101. On July 26, 2004 the Appellate Division denied the motion for a stay pending

appeal in a summary order, which read in its entirety: "Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is ORDERED that the motion is denied." The grant of a stay pending appeal is entirely within the discretion of the Appellate Division, yet the Appellate Division refused to acknowledge in any manner Plaintiffs' constitutional arguments and rights.

102. Defendant Piacentini convened another meeting of the Managing Committee on July 6, 2004. Three representatives of the Hindu Temple Society attended under written protest. In pertinent part Defendant Piacentini appeared to make determinations on the following matters:

A. That applications for "membership" were to be sent to the Temple.

B. Hindu Temple Society representatives were to prepare a revised draft application.

C. Voting members had to be Hindus.

96. At a meeting of Defendant Piacentini's "Managing Committee" held on July 14, 2004, Defendant Piacentini issued the following directives to the Temple:

A. By 7/16/04, fax me the revised and corrected application form Temple letterhead.

B. By 7/20/04, Open a P.O. Box with 2 persons (Gandhi and Sundararaman) and let me know.

C. 7/23/04: Prepare the final application form and send it to the Mailing House, along with his covering letter. Give me the name and telephone number of the mailing house. The mailing should be done by 2nd or 3rd week of August/04 latest.

D. 7/23/04: Keep blank application forms in the Temple for people to pick up.

E. 7/2/304: Keep a Box of 2' x 2' in the Temple premises, to receive those applications. The box will have 2 locks- one by each side.

F. The last date for the Application forms to be post-marked should be 9/30/04.

G. Each week the P. O. Box and Drop off box are to be opened by the Managing Committee and vote on the membership acceptance. If there is tie, he will vote.

H. The members should send the check along with the application form and do not cash it, until approved.

I. The Plaintiffs can distribute any solicitation material in the Canteen and Auditorium area, as per my directives in the Interim report.

103. At the July 14, 2004 meeting, Defendant Piacentini set the qualifications for membership in a religious organization and set himself in a position to determine which applicants were Hindus.

104. At the July 14, 2004 meeting, Defendant Piacentini also made clear that anyone at all can be solicited to be a member upon payment of fees of from three to ten dollars. He also determined that a family membership will be entitled to two votes.

105. During the July 14, 2004 "Management Committee" meeting, Defendant Piacentini voted seven times to break ties during the meeting. Six of those votes were against the Hindu Temple Society's position and with the Insurgent Defendants. Those votes were as follows:

A. Members must be Hindus; Referee voted with Hindu Temple Society.

B. That members must participate in the Temple; Referee voted against Hindu Temple Society.

C. That members collectively work to pursue goals of the Society; Referee voted against Hindu Temple Society.

D. That member is willing to meet with Managing Committee; Referee voted against Hindu Temple Society.

E. Allowing advertisement and unlimited solicitation of members by the Insurgent Defendants, even on Temple grounds; Referee voted against Hindu Temple Society.

F. Entrance Fee proposed by Temple Trustees; Referee voted against Hindu Temple Society

G. Method of collecting returned applications; Referee voted against Hindu Temple Society.

106. At the meeting of July 14, Defendant Piacentini reviewed and marked up a copy of the draft application, which the Hindu Temple Society representatives had prepared at his instruction, including a section of text which Defendant Piacentini had instructed them to copy from another form draft submitted by the Insurgent Defendants. Also in accordance with his instructions, they sent it to all members of the Managing Committee within the time frame that he ordered. Subsequently they received a fax from one of the Insurgent Defendants claiming that his entire form had been ordered substituted for the Hindu Temple Society form. This new form actually made two significant changes from what was approved at the July 14 meeting. When counsel for the Hindu Temple Society representatives wrote asking for clarification, Defendant Piacentini wrote back, *inter alia*:

> "It is not necessary, nor is it warranted for the respondents or the petitioners to have their attorneys send me an opinion on a matter that is strictly within the realm of the Managing Committee
>
> "You are reminded that if there is a lack of cooperation or any attempt on the part of Petitioners or Respondents to thwart the objectives of my appointment, that attempt will be met with Court intervention."

107. When the Hindu Temple Society representatives themselves requested clarification concerning the return address that was to appear on the letterhead, Defendant Piacentini did not respond.

108. Defendant Piacentini has also drafted a letter to accompany the membership application, which states unequivocally that persons who choose become members shall have the right to vote to choose the Trustees of the Temple.

109. Defendants have therefore begun to order the Temple and other Plaintiffs

who are members of the Board of Trustees, under threat of contempt, to implement a democratic voting membership. They have directly and unequivocally inserted themselves into matters in which the Hindu Temple Society must, according to its beliefs, be autonomous and free of state interference.

110. The membership application which Defendant Piacentini has ordered sent out to the general mailing list requires that applicants be Hindus.

111. When asked how the Managing Committee could determine whether a person is a Hindu, Defendant Piacentini stated that the Managing Committee should base its determination on the applicant's last name. If the two groups cannot agree, Defendant Piacentini, a non-Hindu, will decide whether the applicant is a Hindu or not, presumably on the same basis (the application form affords no information as to a person's religious beliefs), equating religious belief with ethnicity.

112. Defendant Piacentini will be effectively determining the religious beliefs and status of any questionable applicants, contrary to Plaintiffs' beliefs.

113. Defendants Golia and Piacentini's attempt to impose membership—a concept rooted more in Christian and Jewish beliefs about how religious groups should be organized—on the Temple runs counter to common Hindu practice and belief, to the practice and belief of most of the devotees of the Temple, and to the practice and belief of Plaintiffs in particular. It also runs contrary to Article 9.

114. Defendant Piacentini has prepared a letter and membership application form which notifies all of the thousands of persons on the mailing list that they will be permitted to vote to elect Trustees to the Temple Board and has already scheduled and ordered the Temple to mail this information.

115. This mailing will interfere with the free exercise of the Plaintiffs by breaching the trust between the Temple and the devotees who have given the Temple their names and personal data in trust

116. This mailing will cause irreparable harm to the religious relationship between the Temple and many traditional Hindus, who do not believe that such religious politics and self-seeking are consonant with Hindu beliefs

117. This mailing will significantly interfere with the Temple's religious relationship with its devotees.

116. Defendant Piacentini's assertion of control over the membership list, books, records, and other legal, financial and religious materials interferes with the free exercise of the Plaintiffs by subjecting the Temple, as a religious polity, to a process for determining membership and the concept of membership itself, both of which are inimical to the Hindu beliefs of Plaintiffs, many other devotees of the Temple and Hindus in general.

117. Defendant Golia's orders have prevented the Temple from speaking to its devotees, from expanding the physical space for priestly and other uses, and from building the rajagopuram, activities which are religious in nature and crucial to the religious mission of the Temple. These orders substantially burden Plaintiffs' exercise of their religious beliefs and discriminate against this religious group.

118. Defendants Golia and Piacentini have consistently exhibited hostility and bias towards the Plaintiffs and the other State Court Action respondents, depriving them of their rights to procedural due process and a full and fair resolution of Plaintiffs' constitutional defenses.

119. Issuance of a preliminary injunction will, in Plaintiffs' estimation, maintain the status quo pending full trial on the merits on the issues in this lawsuit and will do the least harm to any of the parties to this lawsuit or the State Court Action.

## LEGAL VIOLATIONS

### COUNT I

Violation of the United States Constitution

Free Exercise of Religion: First and Fourteenth Amendments

(42 U.S.C. § 1983 and 42 U.S.C. § 1985)

120. Paragraphs 1 though 119 are incorporated by reference as if set forth fully herein.

121. Defendants, under color of law, have deprived, have conspired to deprive, and continue to deprive Plaintiffs of their free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by discriminating against Plaintiffs because of their religion, and by substantially burdening their religious exercise without a compelling governmental interest.

122. Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

### COUNT II

Violation of the United States Constitution

Free Speech: First and Fourteenth Amendments

(42 U.S.C. § 1983 and 42 U.S.C. § 1985)

123. Paragraphs 1 though 122 are incorporated by reference as if set forth fully herein.

124. Defendants' decision and actions, under color of law, to determine the form of religious polity of the Temple deprived Plaintiffs of their right to freedom of speech, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by limiting their right to expressive association without a compelling governmental interest.

125. Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

**COUNT III**

Violation of the United States Constitution

Equal Protection: Fourteenth Amendment

(42 U.S.C. § 1983 and 42 U.S.C. § 1985)

126. Paragraphs 1 though 125 are incorporated by reference as if set forth fully herein.

127. Defendants, under color of law, denied, and conspired to deny, Plaintiffs equal protection of the law by failing to apply the Religious Corporations Law to them on terms similar to those applied to all other religious corporations and persons.

128. Defendants, under color of law, discriminated against, and conspired to discriminate against, Plaintiffs based on (1) religious status; and (2) exercise of fundamental First Amendment rights, without any compelling governmental interest.

129. Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

## COUNT IV

Violation of the United States Constitution

Procedural Due Process: Fourteenth Amendment

(42 U.S.C. § 1983 and 42 U.S.C. § 1985)

130. Paragraphs 1 through 129 are incorporated by reference as if set forth fully herein.

131. Defendants, under color of law, denied, and conspired to deny, Plaintiffs due process of law, as secured by the Fourteenth Amendment to the United States Constitution, by failing to provide Plaintiffs an adequate opportunity to present their claims, in particular their constitutional claims, and by retaliating against Plaintiffs for exercising their rights to legal process.

132. Plaintiffs are entitled to relief against this denial of constitutional rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs ask this Court for the following relief:

A. Preliminary and permanent injunctions enjoining the Defendants from:

(1) attempting to impose a membership requirement on the Temple, send any mailing to the mailing list of the Temple, or identify any individual as a "member" of the Temple;

(2) organize any election of the Board of Trustees of the Hindu Temple Society or remove the current Board of Trustees from office;

(3) citing the Plaintiffs for contempt;

(4) imposing any other penalty on Plaintiffs for the exercise of their constitutionally protected rights to free exercise, free speech and freedom of association;

(5) conspiring with one another to deprive Plaintiffs of their civil rights;

(6) continuing in force and effect any orders interfering with Plaintiffs' religious exercise, including construction of Temple facilities, or limiting in any way the Plaintiffs' ability to communicate with its devotees and other persons interested in the Temple:

B. Declaratory relief stating that

(1) the Temple is not required to comply with those provisions of the RCL that would, if applied to the Temple, result in injury to the Plaintiffs' rights under the United States Constitution.

(2) the RCL is facially unconstitutional insofar as it provides denomination-specific legal benefits to certain denominations but not others, and it requires minority faiths that do not enjoy such denomination-specific benefits to distort their religious structures to conform with the remaining available legal categories.

C. Monetary damages to compensate Plaintiffs for violation of their constitutional and statutory rights, as against the non-State Defendants.

D. An award to Plaintiffs of full costs and attorneys' fees arising out of this

litigation, including without limitation any costs and attorneys' fees awardable under 42 U.S.C. § 1988; and

E. Such other relief that is necessary and appropriate to protect Plaintiffs' rights.

**DEMAND FOR JURY**

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

| August 4, 2004 | Respectfully submitted, |
| --- | --- |
| | THE BECKET FUND FOR RELIGIOUS LIBERTY<br><br>By:________________<br>ROBERT L. GREENE (RG5430)<br>ROMAN P. STORZER<br>ERIC C. RASSBACH<br>1350 Connecticut Avenue, N.W.<br>Suite 605<br>Washington, D.C. 20036<br>(202) 955-0095 |